UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELIZABETH M. SKEENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:20-cv-00418-GCS |
| ) | |
| CONNIE J. ERNST, ROBERT ) | |
| HICKMAN, JOHN HICKMAN, ) | |
| RANDY EUGENE ERNST & TINA ) | |
| MARIE LUKEFAHR, ) | |
| | |
| Defendants. | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment against Defendant Connie J. Ernst. (Doc. 92). Plaintiff filed her Motion for Partial Summary Judgment along with a Memorandum in Support on July 8, 2022. (Doc. 92, 93). In her Memorandum of Support, Plaintiff asserts that Defendant Ernst "violated [her] clear unequivocal statutory duties" to provide the Stella M. Hill Living Trust's beneficiaries and Stella Hill's descendants, including Plaintiff, with an accounting and records of her actions performed in her capacity as sole Trustee and former durable power of attorney for Stella M. Hill. (Doc. 93, p. 1-2). Plaintiff specifically alleges Defendant violated provisions of the Illinois Trust Code, the Illinois Power of Attorney Act, and her fiduciary duty as sole trustee of the Trust. (Doc. 93, p. 1). Plaintiff seeks Defendant's removal as trustee of the Trust and attorney's fees for these alleged breaches. (Doc. 93, p. 11). Defendant Ernst filed a Response in Opposition to the Motion for Partial

Summary Judgment on August 19, 2022. (Doc. 98). For the reasons delineated below, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment. (Doc. 92).

## BACKGROUND

**A.     The Stella M. Hill Living Trust**

Stella M. Hill ("Stella Hill") established the Stella M. Hill Living Trust (the "Trust") on September 22, 2006. (Doc. 93, Exh. 1, p. 6). On September 18, 2015, Stella M. Hill executed a complete restatement of the Trust. *Id.*

The following substantive provisions of the Trust noted below are relevant to the matter at hand:

- **Article One, Establishing My Trust:** The parties to this restated trust are Stella M. Hill (the Grantor) and Stella M. Hill (my Trustee). *Id.* at p. 6.

- **Article Two, Family Information:** I have one child, Connie Jeanne Ernst, born on . . . . All references in this document to my children are references to this child. References to my descendants are to my children and their descendants, including any deceased child's descendants. I wish to honor the memories of my deceased children: Gary Stephen Bernhardt . . . . and Patricia Kay Gross . . . . *Id.* at p. 10.

- **Article Three, Trustee Succession Provisions, Section 3.03(a) – Trustee Succession after My Death – Successor Trustee:** I name my daughter Connie Jeanne Ernst . . . to serve as my successor Trustee after my death, replacing any then-serving Trustee. If Connie is unwilling or unable to serve, then I name my grandson Randy Ernst . . . to serve as my successor Trustee after my death, replacing any then-serving Trustee. *Id.* at p. 12.

- **Article Three, Trustee Succession Provisions, Section 3.03(b) – Trustee Succession after My Death- Removal of Trustee:** A Trustee of any trust created under this instrument may be removed, with or without cause, by the unanimous decision of all the trust's Income Beneficiaries. *Id.*

- **Article Eleven, Distribution to My Descendants, Section 11.01 – Division of My Trust Property:** My Trustee shall divide my remaining trust property into separate shares for my descendants, per stirpes. My Trustee shall distribute the

shares set aside for my living children outright and free of trust to said living children. My Trustee shall administer the share for each descendant of a deceased child as provided in Section 11.02. [1] *Id.* at p. 35.

- **Article Eleven, Distribution to My Descendants, Section 11.02 – Distribution of Trust Shares for Descendants of a Deceased Child:** My Trustee shall distribute the share set aside for a descendant of a deceased child to the descendant outright and free of trust. *Id.*

- **Article Fifteen, Trust Administration, Section 15.04 – No Court Proceedings:**

  My Trustee shall administer this trust . . . with freedom from judicial intervention. If . . . [an] interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding. Any proceedings to seek instructions or a court determination may only be initiated in the court with original jurisdiction over matters relating to the construction and administration of trusts . . . .

  I request that any questions or disputes that arise during the administration of the trust be resolved by mediation and, if necessary, arbitration in accordance with the Uniform Arbitration Act. *Id.* at p. 44.

- **Article Fifteen, Trust Administration, Section 15.11 – Trust Accounting:**

  After my death, my Trustee must provide an annual accounting to the Income Beneficiaries of any trust created under this trust unless waived by the Income Beneficiaries.

  This annual accounting must include the receipts, expenditures, and distributions of income and principal and the assets on hand for the accounting period. A copy of the federal fiduciary tax return filed for a trust during the accounting will satisfy this reporting requirement. . . .

  A beneficiary may object to an accounting provided by my Trustee only by giving written notice to my Trustee within 60 days after my Trustee provides the accounting. Any beneficiary who does not submit a timely objection . . . is considered to assent to the accounting.

  My trustee must make the trust's financial records and documents available to beneficiaries at reasonable times and upon reasonable notice for

---

[1] Article 11's distribution of assets is subject to Article 5 of the Trust. Article 5 of the Trust lays out the specific taxes and expenses that the Trustee may pay out of the Trust prior to distributing the remaining assets to Stella M. Hills descendants. (Doc. 93, Exh. 1., p. 18).

inspection. . . . *Id.* at. p. 47-48.

- **Article Seventeen, General Provisions, Section 17.07(b) – Descendants:** The term descendants means persons who directly descend from a person, such as children, grandchildren, or great-grand-children. The term descendants does not include collateral descendants . . . . *Id.* at p. 63-64.

- **Article Seventeen, General Provisions, Section 17.07(d) – Good Faith:**

    For purposes of this trust, a Trustee has acted in good faith if:

    an action or inaction is not a result of intentional wrongdoing;

    the Trustee did not make the decision to act or not act with reckless indifference to the beneficiaries' interests; and

    an action or inaction does not result in an improper personal benefit to the Trustee.

    Further, all parties . . . will treat any action or inaction made in reliance on information, consent or directions received from the Personal Representative of my estate as made in good faith . . . except for cases of willful misconduct or malfeasance on the Trustee's part. *Id.* at. p. 64.

- **Article Seventeen, General Provisions, Section 17.07(g) – Income Beneficiary:** The term Income Beneficiary means any beneficiary who is entitled to receive distributions of the trust's net income, whether mandatory or discretionary. *Id.* at p. 66.

**B.     The Family of Stella M. Hill**

Stella M. Hill was married to James L. Hill on January 6, 1972. (Doc. 93, Exh. 1, p. 10). James L. Hill died on May 15, 2019, and Stella M. Hill passed away on May 27, 2019. (Doc. 93, p. 4). No biological children were born of their marriage. (Doc. 93, p. 2). However, Stella M. Hill had three children from a prior marriage: Defendant, Connie J. Ernst; Gary S. Bernhardt; and Patricia K. Gross. *Id.* Daughter, Connie J. Ernst is living and has one son – Randy Eugene Ernst. (Doc. 93, Exh. 1, p. 10); (Doc. 93, p. 3). Son, Gary

Bernhardt, died on February 14, 2013, leaving one adult descendant– Plaintiff, Elizabeth M. Skeens and no predeceased descendants. (Doc. 93, Exh. 1, p. 10); (Doc. 93, p. 2). Daughter, Patricia Gross, died on May 14, 2015, leaving two adult descendants – Robert Hickman and John Hickman. (Doc. 93, Exh. 1, p. 10); (Doc. 93, p. 2).

On June 28, 2016, Stella M. Hill executed a General Power of Attorney, designating Connie Ernst as her attorney-in-fact, and Randy Ernst as her alternate or successor Agent. (Doc. 93, Exh. 3). Ms. Ernst acted as Stella M. Hill's attorney-in-fact from June 2016 to the date of her death. In the years proceeding Stella M. Hill's death, Connie Ernst reportedly cared for her on "a nearly daily basis," while granddaughter Elizabeth Skeens was reportedly not involved in her grandmother's life in the years proceeding her death. (Doc. 98, p. 4).

C.    **Dispute as to the Stella M. Hill Trust**

At the time of Stella M. Hill's death, the only asset owned by the Trust was a Wells Fargo Bank Account (ending in 7645) with an approximate value of $175.357.70. (Doc. 93, Exh. 4, p. 1-2). While Stella M. Hill and James L. Hill also maintained a bank account at First Mid Bank and Trust, Connie Ernst was a joint owner of the account. (Doc. 98, Exh. 5). As such, upon two of the joint owners' deaths, the account transferred to the only remaining joint owner, Connie Ernst. (Doc. 98, Exh. 2). Additionally, prior to the couple's death, the Hill's transferred their real property located in Lake Egypt to grandson Randy Ernst on August 17, 2018. (Doc. 93, Exh. 4, p. 3).

Following Stella M. Hill's Death, Defendant wrote to Plaintiff on August 15, 2019, notifying her that one of her grandmother's bracelets would be set aside for her in

addition to a monetary bequeath. (Doc. 98, Exh. 4). Defendant wrote to Plaintiff again on August 31, 2019, and provided Plaintiff with a copy of the Trust. *Id.* Defendant received a letter in response from Plaintiff on October 24, 2019. (Doc. 93, Exh. 5). In the letter, Plaintiff confirmed that she had reviewed the provisions of the Trust and requested contact information for Defendant's attorney assisting her with the execution of the trust. *Id.* On November 11, 2019, Plaintiff's counsel contacted Defendant's prior counsel, requesting the following information about the Stella M. Hill Trust and probate estate:

> An inventory (itemized list) of the assets of the Trust and probate estate and confirmation as to how each asset is titled (e.g. in the Trust or in Mrs. Hill's name alone);
>
> The value of each asset, both at the date of Mrs. Hill's death and as of the current date;
>
> A list of receipts and disbursements of the Trust, with a brief explanation of each entry on the list, beginning with Mrs. Hill's date of death, up through the present date;
>
> A list of receipts and disbursements of the probate assets, if any;
>
> A timeline for filing Mrs. Hill's Last Will and Testament with the appropriate court and whether a probate proceeding will be filed, along with the nature of the proceeding (e.g. full estate administration, small estate affidavit, etc.); and
>
> A list of any non-probate assets and/or transfers as a result of Mrs. Hill's death, including but not limited to any transfer on death, pay on death, or other beneficiaries designated on such assets.

(Doc. 93, Exh. 6). Defendant's prior counsel responded on November 27, 2019, indicating that she would attempt to work with Defendant to put an accounting together, but that she was no longer capable of handling litigation and had limited availability, such that she may need to discontinue representing Defendant. (Doc. 93, Exh. 7).

On May 6, 2020, Plaintiff filed the present action with this Court. (Doc. 1). Shortly thereafter, on July 22, 2020, Mr. Matthew Ferrell entered his appearance on behalf of Defendant in this matter. (Doc. 16). Nine days later, on July 31, 2020, Defendant's Counsel provided Plaintiff's counsel with "Snapshot" Account information for the Wells Fargo Account from October 2019. (Doc. 98, Exh. 1, p. 34-43). On September 3, 2020, Counsel for Defendant updated Plaintiff's Counsel, informing them that that the only asset belonging to the Trust was the Wells Fargo account and that he would be receiving the most recent account statement. (Doc. 98, Exh. 2). Defendant's Counsel also indicated that he would request the prior statements from Wells Fargo, if they would disclose those to him. *Id.* He requested that the September 3, 2020, correspondence serve as his "client's accounting of the assets subject to distribution under the [T]rust." *Id.*

Plaintiff alleges that Defendant has never provided any beneficiary with "a formal account of the trust" nor has she provided Plaintiff with "an accounting for all funds handled in her capacity as Stella M. Hill's Agent under Durable Power of Attorney." (Doc. 93, p. 6). Further, when Defendant was asked if she ever "attempted to gather the inventory or give information to the beneficiaries of the Trust an inventory of the trust assets or the receipts and disbursements of the Trust's assets", Defendant replied "It was none of [her] business." (Doc. 93, Exh. 2, p. 56: 16-20). To date, Defendant has not distributed the Wells Fargo Account owned by the Trust to the Trust's beneficiaries.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). While the Court may not "weigh evidence and determine the truth of the matter [,]" it must ascertain whether a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party to [rule in favor of] that party . . . if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence

in support of the [non-movant's] position will be insufficient[.]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## DISCUSSION

Plaintiff Skeens first asserts that Defendant Ernst violated her obligation to provide the beneficiaries of the Stella M. Hill Living Trust with an accounting of the Trust in accordance with Article Fifteen of the Trust and § 813.2(b) of the Illinois Trust Code. (Doc. 93, p. 7-8). Defendant claims that the documentation provided by Defendant's counsel on September 3, 2020, constitutes an accounting for the purposes of the Illinois Trust Code and therefore contends that Defendant has met her obligation under the statute and Article Fifteen of the Trust. (Doc. 98, p. 6-8). Because neither the Illinois Trust Code nor the Trust itself details how the accounting should be supplied to Plaintiff, the Court finds it cannot conclude as a matter of law that an accounting of the Trust was not provided. As such, the Court **DENIES** Summary Judgment as to Count 1 of Plaintiff's Motion for Partial Summary Judgment. (Doc. 93).

The Illinois Trust Code provides that "[e]very trustee at least annually shall furnish to the beneficiaries . . . a current account showing the receipts, disbursements, and inventory of the trust estate." 760 ILL. COMP. STAT. § 3/813.2(b). Further, Section 15.11 of the Trust provides that the "Trustee must provide an annual accounting to the Income Beneficiaries of any trust created under this trust unless waived by the Income

Beneficiaries." (Doc. 93, Exh. 1, p. 47). The Trust language is clear and unambiguous and establishes that Plaintiff is a beneficiary of the Trust as set out in Article Two. (Doc. 93, Exh. 1, p. 10). Therefore, Plaintiff is entitled to receive accountings of the Trust.

While the Illinois Trust Code does not further illuminate what form the accounting should take, it does specifically indicate that such accounting should be "*current*." 760 ILL. COMP. STAT. § 3/813.2(b). Illinois Courts have recognized that such an accounting is critical because it allows beneficiaries to "learn from [their] trustee 'what property came into his hands, what has passed out, and what remains therein, including all receipts, disbursements in cash, and the sources from which they came, to whom paid and for what purpose paid.'" *Woolard v. Woolard*, 547 F.3d 755, 761 (7th Cir. 2008) (quoting *McCormick v. McCormick*, 455 N.E.2d 103, 109 (Ill. Ct. App. 1st Dist. 1983) (citing *Wylie v. Bushnell*, 115 N.E. 618, 622 (Ill. 1917)). Without this information, beneficiaries would be unable to enforce their rights under the trust or to prevent or redress a breach of the trust. *See, e.g., Sanders v. Stasi*, 951 N.E.2d 1274, 1278 (Ill. Ct. App. 4th Dist. 2011)(noting that "plaintiff is unable to enforce her entitlement if she does not receive an accounting"). *See also Wallace v. Malooly*, 122 N.E.2d 275, 280 (Ill. 1954)(recognizing that the legal principles, as stated in the Restatement (First) of Trusts § 173, at 314-315 (1935), that (1) a beneficiary has the right to an inspection upon demand so that the beneficiary can verify that the trust is being properly executed, as long as the beneficiary's purpose in doing so is proper; and (2) a beneficiary is always entitled to such information as is reasonably necessary to enable the beneficiary to enforce his rights under the trust or to prevent or redress a breach of trust).

Section 15.11 of the Trust itself provides the Court with a clearer picture of what the accounting should entail in this case. Section 15.11 states that "a copy of a federal fiduciary tax return filed for the Trust during the accounting will satisfy this reporting requirement." (Doc. 93, Exh. 1, p. 47). According to the Internal Revenue Service ("IRS"), the fiduciary of a domestic decedent's trust files an income tax return for estates and trusts for the purpose of reporting: "[t]he income, deductions, gains losses, etc. of the estate or trust; The income that is either accumulated or held for future distribution or distributed currently to the beneficiaries; Any income tax liability of the estate or trust; [and] Employment taxes on wages paid to household employees."[2] Thus, the accounting of the Trust should afford the beneficiaries the opportunity to assess the trust's status with a similar degree of detail.

Through the litigation process, Plaintiff Skeens has acquired two sets of documentation that have arguably provided her with such information. Plaintiff first received documentation that amounted to an accounting on July 31, 2020. (Doc. 98, Exh. 1, p. 1, 13-22). Defendant's counsel, Mr. Matthew Ferrell emailed Plaintiff's Attorneys, Mr. David Simmons and Ms. Betty Schaefer, account statements dated October 31, 2019, from the Wells Fargo Bank Account ending in 7645. *Id.* at p. 13-22. These statements listed the closing value of the account and indicated that no cash or securities had been withdrawn. The statements also documented the changing value of the account from interest accrual and contained an overview of the investments within the account that are

---

[2] Information pertaining to the Income Tax Return for Estates and Trusts was taken from the Internal Revenue Service's website. *See* Internal Revenue Service, "About Form 1041, U.S. Income Tax Return for Estates and Trusts," https://www.irs.gov/forms-pubs/about-form-1041 (last visited Mar. 28, 2023).

held in mutual funds. *Id.* at p. 15, 19-21. At the close of his email, Mr. Ferrell indicated that he would "continue to forward information upon receipt from his client." *Id.* at p. 1.

Plaintiff received additional documentation that conceivably amounted to an accounting later in 2022. Exhibit H attached to Plaintiff's Motion for Partial Summary Judgment contains account statements with the same information as the October 2019 statement for the months of January through May of 2022. (Doc. 93, Exh. 8, p. 1-40.) Over this period, the balance of the account decreased. *Id.* at p. 3, 35. However, each of the monthly statements show that no cash or securities withdrawals were taken out at any time. *Id.* at p. 3, 11, 19, 27, 35. Because the documentation allows Plaintiff to see a detailed ledger each month for the account, the documentation could be understood as satisfying the accounting for the Trust. As such, based on the current record, the Court cannot conclude as a matter of law that an accounting was not provided in this case.

Plaintiff next argues that Defendant has breached her fiduciary duty by "(1) failing and refusing to provide Plaintiff with an accounting containing information necessary to protect Plaintiff's interest in the Trust, and (2) by failing to expeditiously distribute the share of the remaining assets of the Trust to which Plaintiff is entitled pursuant to Article 11 of the Trust." (Doc. 93, p. 10). As noted above, the Court cannot say as matter of law that an accounting was not provided by Defendant. Therefore, the Court will only address Plaintiff's second allegation concerning the expeditious distribution of the Trust.

Plaintiff is correct in recognizing that acceptance of the role of trustee creates an obligation to administer the trust in accordance with the terms of the trust agreement and that failure to adhere to these terms is a breach of the trust for which the trustee is

personally liable. *See Woolard v. Woolard*, No. 05 C 7280, 2007 WL 2789097 (N.D. Ill. Sept. 19, 2007) (aff'd 547 F.3d 755 (7th Cir. 2008)). Further, Section 11.02 of the Trust states that the "Trustee shall distribute the share set aside for a descendant of a deceased child to the descendant outright and free of trust." (Doc. 93, Exh. 1, p. 35). However, Plaintiff initially did not have a problem with waiting for the distribution, noting in her correspondence to Defendant on October 24, 2019, that she was "not trying to rush [her] on this, but that [she] would like to have an idea on timing." (Doc. 93, Exh. 5, p. 1). Plaintiff filed this lawsuit approximately six months later on May 6, 2020. (Doc. 1). Thus, the delay in distribution has been caused by Plaintiff's choice to litigate the matter, thereby essentially freezing the funds until the Court resolves the outstanding issues regarding the Trust's administration.[3]

Additionally, Defendant testified that Wells Fargo requires the distribution of the trust "to be cleared by a lawyer to be divided amongst the [beneficiaries]." (Doc. 93, Exh. 2, p. 36:4-37:7). Wells Fargo's requirements for distribution are not within the exclusive control of Defendant and Plaintiff cannot place the blame for Wells Fargo's policies on her. Defendant's counsel has wisely informed his client that Plaintiff should not take any action to distribute the funds in the account until the litigation is concluded and a distribution is approved by this Court or counsel for all parties. Upon her counsel's advice, Defendant has left the challenged funds untouched in the Wells Fargo account since Stella Hill's death. Given these circumstances, Defendant's action cannot constitute

---

[3] Section 15.04 of the Trust acknowledges that the Court acquires jurisdiction only to the extent necessary for that proceeding relating to the construction and administration of the Trust. (Doc. 93, Exh. 1, p. 44).

a breach of her fiduciary duty. Rather, it is a prudent decision of Defendant in the face of the legal claims filed by Plaintiff. As such, Plaintiff's decision to litigate this matter is ultimately what is causing the delay in distribution of the account funds. Therefore, the Court cannot find that Defendant has breached any fiduciary duty owed to Plaintiff as Trustee of the Trust and **DENIES** Count 2 of Plaintiff's Partial Motion for Summary Judgment.

In relation to Plaintiff's allegations of Defendant breaching her fiduciary duty owed to Plaintiff as Trustee of the Trust and her alleged violation of the Illinois Trust Code, Plaintiff requests that Defendant be removed as Trustee. (Doc. 93, p. 11). A court may remove a trustee if the trustee has committed a serious breach of trust or because of the unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively. *See* 760 ILL. COMP. STAT. § 3/706(b). *See also Slick v. Slane as trustee of Roxan Slane Revocable Tr. Dated June 30, 1997, as Ratified and Restated on April 3, 2009 and July 21, 2015*, Case No. 20-cv-1355-JES-JEH, 2022 WL 2668366, at *2-3 (C.D. Ill. July 11, 2022)(removing the trustee because he "inconsistently represented the value of the trust, failed to provide an accounting, misrepresented the situs of the administration of the trust, and misrepresented his contacts with the State of Illinois); *Ropp v. Ropp, Tr. Of Donald Lee Ropp, Sr., Living Tr. u/t/a 12/12/2007*, Appeal Nos. 3-20-0196, 3-20-0197, 3-20-0198, 3-20-0199, 2021 WL 4932562, at *3 (Ill. App. Ct. 3rd Dist. Oct. 20, 2021)(removing the trustee because he had undertaken efforts to disinherit beneficiaries for his own benefit; he failed to provide an accounting; he breached his statutory duties to keep adequate records and segregate trust assets; he breached his statutory duty of impartiality; and he

engaged in self-dealing).

Based on the current record, Defendant's conduct does not rise to the standard of misconduct that would cause this Court to remove Defendant as a trustee. Defendant now has Counsel to assist and advise her in the administration of the Trust. That Counsel has advised Plaintiff to not disburse the funds until litigation is concluded, and Counsel is receiving all documentation for the Wells Fargo account in question so as to ensure proper information is being exchanged amongst the parties. (Doc. 98, p. 14). Therefore, the Court finds it inappropriate to remove Defendant as trustee at this time. However, the Trust provides for an alternative means through which Defendant may be removed. Under Section 3.03(b) of the Trust, "[a] Trustee of any trust created under this instrument may be removed, with or without cause, by the unanimous decision of all the trust's Income Beneficiaries." (Doc. 93, Exh. 1, p. 12). Should Plaintiff be concerned about Defendant's conduct, she may pursue this means of removal or return to the Court with allegations of egregious misconduct. Therefore, the Court **DENIES** Count 3 of Plaintiff's Motion for Partial Summary Judgment.

In response to Defendant's alleged breaches of the Illinois Trust Code and her fiduciary duties as Trustee, Plaintiff indicates that she is seeking attorney's fees, costs and expenses from Defendant pursuant to 760 ILL. COMP. STAT. § 3/1004 which states that: "[i]n a judicial proceeding involving the administration of a trust, the court, as equity may require, may reward costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is subject of the controversy." 760 ILL. COMP. STAT. § 3/1004. At this juncture, the Court finds that providing attorney's fees

would be premature because the litigation remains ongoing. As such the Court **DENIES** Count 5 of Plaintiff's Motion for Partial Summary Judgment.

Lastly, Plaintiff alleges that Defendant has violated her statutory duty under the Illinois Power of Attorney Act. (Doc. 93, p. 11-12). *See, e.g.*, 755 ILL. COMP. STAT. § 45/2-7(c)(1)(stating that an agent under a Durable Power of Attorney must "keep a record of all receipts, disbursements, and significant actions taken under the authority of the agency and shall provide a copy of this record when requested to do so . . . after the death of the principal . . . [by] successors in interest of the principal's estate."). Plaintiff alleges that Defendant has a duty under the Illinois Power of Attorney Act to furnish an accounting to Plaintiff of her actions taken in her capacity as Stella M. Hill's former power of attorney. *Id.* Defendant believes that the statute relied upon by Plaintiff "does not authorize [the] legal action taken by the Plaintiff in this case" and expressly does not include the desired remedy for Defendant's alleged conduct. (Doc. 98, p. 10-11). The Court agrees with Defendant.

The Illinois Power of Attorney Act dictates who is authorized to act when an agent breaches their duties under the Act and provides a specific remedy for alleged violations. *See* 75 ILL. COMP. STAT. § 45/2-7(d). Section 2-7(d) of the Act provides:

> If the agent fails to provide his or her record of all receipts, disbursements, and significant actions within 21 days after a request under subsection (c), the adult abuse provider agency, the State Guardian, the public guardian, or a representative of the Office of the State Long Term Care Ombudsman may petition the court for an order requiring the agent to produce his or her record of receipts, disbursements, and significant actions.

*Id.* The Plaintiff does not fall under any of the classes authorized by the statute to bring

an action seeking an order requiring the agent to produce her records of receipts. *See, e.g.*, *In re Estate of Rodden*, 26 N.E.3d 417, 419 (Ill. Ct. App. 1st Dist. 2015)(allowing the public guardian of Cook County to pursue an action under the Illinois Power of Attorney Act); *In re Estate of Jackson*, No. 1-21-1132, 2022 WL17369648, at * 4 (Ill. Ct. App. 1st Dist. Dec. 2, 2022)(allowing a *Guardian ad litem* [state guardian] to pursue an action under the Illinois Power of Attorney Act). Therefore, Plaintiff's action under the statute does not appear to be authorized. Thus, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment as to Count 4 as well.

## CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment. (Doc. 92). The Court will set a status conference by a separate docket text order to discuss the possibility of mediation and future proceedings in this matter.

**IT IS SO ORDERED.**

DATED:  March 31, 2023.

Digitally signed by Judge Sison 2
Date: 2023.03.31 14:46:50 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**